**Charles William JERNIGAN, Plaintiff/Appellant,**

v.

**Bill HAM, Individually and d/b/a Memphis Ford Tractor, Inc., Defendant/Appellee.**

Court of Appeals of Tennessee, Western Section at Jackson.

Dec. 11, 1984.

Permission to Appeal Denied by Supreme Court June 3, 1985.

Eulyse M. Smith, Memphis, for plaintiff/appellant.

William R. Swain, Jr., Memphis, for defendant/appellee.

HIGHERS, Judge.

This case involves the applicability of T.C.A. § 47–2–401 and § 47–2–403.

The plaintiff, a resident of Shelby County, offered his 1954 Ford Jubilee tractor for sale in the front yard of his home.[1] In December 1982, he was contacted by an individual named John Rickman who expressed an interest in purchasing the tractor. Rickman inspected the tractor on or

---

1. The parties will be referred to by name or as they were styled in the trial court.

about December 22, 1982, and informed the plaintiff that he would discuss the matter with his brother and that he would notify the plaintiff if they wished to purchase the tractor. He later called the plaintiff and offered to purchase the tractor and blade for $2,250.00.

When Rickman returned and loaded the tractor and grader blade onto his trailer, he gave the plaintiff a check. The plaintiff stated that he did not want a check, but that he required cash. They agreed, however, that since the tractor was already loaded, Rickman could take it and return with the cash the next day at which time the plaintiff would give him a bill of sale.

On the following day, December 23, 1982, Rickman took the tractor and blade to Memphis Ford Tractor, Inc., and through William Ham sold the equipment for $1,500.00. When Ham bought the tractor and blade from Rickman, he did not ask for a bill of sale. Ham testified that it is not customary to demand a bill of sale because "it's very doubtful that people could go back and dig up a bill of sale that they've had for years and years." Rickman told Ham that the tractor had been used at a deer camp. Ham testified that although the tractor was clean, most sellers clean their equipment before bringing it to sell. Ham also noticed that Rickman's truck had Arkansas license plates, but Ham stated that he often bought tractors from individuals from Arkansas and Mississippi. Ham had no prior or subsequent dealings with Rickman.

When Rickman failed to return with cash, the plaintiff began to search for Rickman and the tractor. He located the tractor on the lot of the Memphis Ford Tractor, Inc., on the evening of December 23, 1982. On the next day, the plaintiff contacted Ham about the tractor and demanded possession, but Ham refused to relinquish the tractor.

The plaintiff filed suit in the General Sessions Court, and judgment was rendered in his favor for the return of the tractor or for $2,250.00. On appeal to the Circuit Court, this judgment was reversed and the action was dismissed. In the meantime, the defendant sold the tractor in the regular course of business for $2,300.00 and the blade for approximately $150.00. Rickman never paid the check to the plaintiff, and he was subsequently convicted of larceny by trick and passing bad checks.

T.C.A. § 47–2–403 provides:

(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:

(a) the transferor was deceived as to the identity of the purchaser, or

(b) the delivery was in exchange for a check which is later dishonored, or

(c) it was agreed that the transaction was to be a "cash sale," or

(d) the delivery was procured through fraud punishable as larcenous under the criminal law.

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

(4) The rights of other purchasers of goods and of lien creditors are governed by the chapters on Secured Transactions (chapter 9 of this title), Bulk Transfers (chapter 6 of this title) and Documents of Title (chapter 7 of this title).

■ The plaintiff contends that the foregoing provision does not apply because there is either a bailment or there is a theft in this case. We cannot agree that the facts of this case constitute a bailment. Bailment is the delivery of personalty to another for a particular purpose or on mere deposit of an express or implied contract that after the purpose has been fulfilled, the property should be returned to the person who delivered it. *Rhodes v. Pioneer Parking Lot, Inc.,* 501 S.W.2d 569 (Tenn. 1973). There is no indication in the record that the plaintiff and Rickman contracted for anything other than a sale. The plaintiff intended to relinquish possession on a permanent rather than on a temporary basis.

■ The plaintiff correctly argues that an innocent purchaser of stolen goods may be liable to the rightful owner of the proceeds of their subsequent sale. See *Duncan v. State Farm Fire & Casualty Company,* 587 S.W.2d 375 (Tenn.1979). On the other hand, however, T.C.A. § 47–2–403(1) empowers a purchaser with a voidable title to confer good title upon a good faith purchaser for value where the good were procured through fraud punishable as larcenous under the criminal law. The distinction between *theft* and *fraud* in this context is found in the statutory definitions of "delivery" and "purchase." Delivery concerns a voluntary transfer of possession, T.C.A. § 47–1–201(14), and purchase refers to a voluntary transaction creating an interest in property. T.C.A. § 47–1–201(32). In the present case, the plaintiff voluntarily relinquished possession to Rickman. As one commentator has pointed out, "[a] thief who wrongfully takes goods is not a purchaser ... but a swindler who fraudulently induces the victim to voluntarily deliver them is a purchaser ..." 2 W. Hawkland, Uniform Commercial Code Series, § 2–4–3–03, pp. 606–07 (1982).

■ The plaintiff takes the position that larceny by trick is not fraud within the meaning of the statute. We find this argument to be without merit. The comments to T.C.A. § 47–2–403 state:

... subsection (1) provides specifically for the protection of the good faith purchaser for value in a number of specific situations which have been troublesome under prior law ...

The principle is extended in subsection (3) to fit with the abolition of the old law of "cash sale" by subsection (1)(c). It is also freed from any technicalities depending on the extended law of larceny; such extension of the concept of theft to include trick, particular types of fraud, and the like is for the purpose of helping conviction to the offender; it has no proper application to the longstanding policy of civil protection of buyers from persons guilty of such trick or fraud. Larceny by trick is defined as theft by fraud or deception. Since the property was voluntarily delivered, we have determined that it was not procured by theft in the ordinary sense of the term and, further, that larceny by trick does not fall into the category of ordinary theft.

■ It is also stressed by the plaintiff that he and Rickman agreed that title to the tractor would be withheld until the plaintiff received cash. From this proposition, the plaintiff argues that § 47–2–403 does not apply because title did not pass. This argument essentially postulates the cash sale doctrine which this section of the code expressly overruled. It has been stated that "subsection (c) repudiates the technical cash sale doctrine, and makes it clear that the delivery to a purchaser gives him voidable title to the goods, even though there was an express or implied agreement that the title should not pass until the transferor received the price in cash." 2 W. Hawkland, *Uniform Commercial Code Series,* § 2–403–03, p. 605 (1982).

Even if the plaintiff were correct in arguing that his reservation of title until payment would preclude the application of § 47–2–403, it is provided in § 47–2–401 that such a reservation is "limited in effect to a reservation of a security interest." If the plaintiff retained only a security interest, he would have no action against the person who ultimately purchased the tractor from defendant because that person, as a buyer in the ordinary course, takes free of a perfected or unperfected security interest pursuant to T.C.A. § 47–9–307.

The plaintiff further argues, however, that even if this case is governed by the Uniform Commercial Code, the defendant is not protected by § 47–2–403 because he was not a good faith purchaser. It is alleged that Ham had reasonable notice that Rickman did not have legal possession of the tractor. In support of this contention, the plaintiff cites *Liles Bros. & Son v. Wright*, 638 S.W.2d 383 (Tenn.1982), and he points out that Rickman's pickup truck had an out-of-state license, that Rickman offered no indicia of ownership, and that although Rickman said the tractor had been used at a deer camp, the tractor was clean and freshly painted. The plaintiff also avers that the defendant lacked good faith because he did not write down the serial number of the tractor, he paid $1,500.00 for the tractor and blade but sold the tractor for $2,300.00 and valued the blade at $150.00, and he advertised in a newspaper that cash would be paid for used Ford tractors.

In *Liles Bros. & Son v. Wright, supra,* the plaintiff sold a new backhoe to one Mangum who then sold it to the defendant. When the check which Mangum gave to the plaintiff was returned for insufficient funds, the plaintiff sought to recover the backhoe from the defendant. The Court held that the defendant was not a bona fide purchaser because he had ample knowledge of the true value of similar backhoes, the bill of sale offered by Mangum as evidence of title was written on a blank purchase order, there were no warranty papers which were standard with new equipment, Mangum told defendant that he could supply him with any make of machinery, and the defendant knew that many backhoes had been stolen. We do not believe the facts in the case *sub judice* are comparable to those which existed in *Liles*. In the instant case, Ham gave wholesale price for a nearly thirty-year-old tractor. In *Liles*, Mangum asked the wholesale price for a new piece of equipment. The difference in the condition of the equipment makes these situations obviously distinguishable.

Further, in *Liles* Mangum offered a bill of sale written on a blank purchase order.

In the case at bar, Rickman presented no indicia of title, but this fact alone does not indicate that defendant acted without good faith. Ham testified that it is not customary to ask for title to a used piece of equipment because it is usually unavailable. In lieu of indicia of title, Ham testified that "you usually try to ask a few questions, and just sort of size up the situation." Based upon the record, the evidence does not preponderate against the finding of the trial court that Ham acted in good faith.

Since the defendant was a good faith purchaser, the *Liles* case is inapplicable to the facts here, and T.C.A. § 47–2–403 controls to bar recovery by the plaintiff.

The judgment of the trial court is accordingly affirmed, and costs are adjudged against the plaintiff.

NEARN, P.J., W.S., and CRAWFORD, J., concur.