**ALSAFI ORIENTAL RUGS,**
Plaintiff/Appellee,

v.

**AMERICAN LOAN COMPANY,**
Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

May 12, 1993.

Application for Permission to Appeal Denied by Supreme Court Sept. 7, 1993.

**42**

Leo Bearman, Jr., Monique A. Nassar, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, and Herschel L. Rosenberg, Memphis, for defendant/appellant.

John D. Horne, Winchester Law Firm, Memphis, for plaintiff/appellee.

TOMLIN, Presiding Judge (Western Section).

This case involves the applicability of T.C.A. § 47–2–401 *et seq.* of the UCC, as well as sections of the Tennessee Pawn Brokers Act, codified at T.C.A. § 45–6–201 *et seq.* Plaintiff, Alsafi Oriental Rugs, filed suit in the Shelby County Circuit Court against defendant, American Loan Company, to recover possession of three oriental rugs. Following a bench trial, the trial court held that the rugs were stolen from plaintiff and awarded him possession of them. On appeal, defendant presents as the sole issue whether or not the trial court erred in so holding. We are of the opinion that the court did err, and accordingly reverse and dismiss.

In December, 1990, Arlene Bradley entered plaintiff's rug store and advised plaintiff that she was an interior decorator and that she was interested in selling some of his rugs to one of her customers. Plaintiff did not know Bradley and had never done business with her. However, he allowed her to take three rugs out on consignment with the understanding that she would return them if her customer was not interested. The fact was, however, that Bradley was not obtaining the rugs for a "customer" but was instead working for another individual, Walid Salaam, a rug dealer.

A friend of Bradley's had introduced her to Salaam earlier. Salaam had advised the two women that he was the owner of an oriental rug store which had recently closed, but that he was attempting to reopen it. He offered to teach them how to become decorators and told them that when his store reopened they could operate out of the store. However, Salaam advised them that until he got his store restocked, he wanted them to "check out" rugs on approval from other rug dealers in town. As they had no experience with oriental rugs, Salaam instructed them what rugs to look for. He then instructed them to go to rug dealers in Memphis and advise them that they were interior decorators with customers that wished to purchase oriental rugs.

After Bradley obtained possession of three rugs from plaintiff, she turned them over to Salaam, who in turn took them to defendant's pawn shop. There Salaam completed the pawn transactions, obtaining approximately $5000 after filling out the required paperwork. Salaam failed to redeem the rugs. The owner of the pawn shop testified that following the default by Salaam he gave the appropriate notice required prior to attempting to dispose of them.

In April, 1991, plaintiff learned that his rugs were in defendant's pawn shop. Upon

visiting the shop he was permitted to inspect the rugs, at which time he identified three as his. He filed this suit to regain possession of them in September, 1991. However, as of November, 1991, he had not reported these rugs as stolen to the Memphis Police Dept. Following a hearing, the trial court held that plaintiff was entitled to possession, reasoning that he was the true owner and that they had been taken by theft.

The trial court stated that based upon the facts this conclusion was justified by the holding of the Middle Section of this Court in *Butler v. Buick Motor Co.*, 813 S.W.2d 454 (Tenn.App.1991). Relying upon *Butler*, the court found that Bradley did not have authority to dispose of the rugs in the way that she did and therefore she could not transfer title to Salaam. Therefore, the attempted transfer to defendant was an unauthorized transaction.

Defendant contends that in so ruling the trial court rejected the decision of this Court in *Jernigan v. Ham*, 691 S.W.2d 553 (Tenn. App.1984), and that based upon *Jernigan* the trial court should have found in its favor. The facts in *Jernigan* are as follows: Jernigan sold a used tractor and blade at a yard sale to Rickman. After loading the tractor and blade onto his trailer, Rickman gave Jernigan a check, whereupon Jernigan advised him that he required cash rather than a check. Jernigan permitted Rickman to take the tractor and return with cash the next day at which time he would give Rickman a bill of sale. Rather than return to Jernigan, Rickman took the tractor and sold it to defendant. He gave defendant no bill of sale nor was one requested. This was defendant's first dealing with Rickman. When Rickman failed to bring the cash to plaintiff, plaintiff began to search for both Rickman and the tractor. He found the tractor on defendant's lot, and after possession had been refused, suit was brought.

Plaintiff obtained a judgment against defendant in General Sessions Court, which was reversed on appeal and dismissed by the Circuit Court. Plaintiff appealed.

This court held that the transaction was governed by T.C.A. § 47-2-403(1), which reads as follows:

(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. *A person with voidable title has power to transfer a good title to a good faith purchaser for value.* When goods have been delivered under a transaction of purchase the purchaser has such power even though:

(a) the transferor was deceived as to the identity of the purchaser, or

(b) the delivery was in exchange or a check which is later dishonored, or

(c) it was agreed that the transaction was to be a "cash sale," or

(d) the delivery was procured through fraud punishable as larcenous under the criminal law.

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

(4) The rights of other purchasers of goods and of lien creditors are governed by the chapters on Secured Transactions (chapter 9 of this title), Bulk Transfers (chapter 6 of this title) and Documents of Title (chapter 7 of this title).

Upon applying this section of the UCC to the facts before us in *Jernigan*, we stated:

The plaintiff correctly argues that an innocent purchaser of stolen goods may be liable to the rightful owner of the proceeds of their subsequent sale. See *Duncan v. State Farm Fire & Casualty Company*, 587 S.W.2d 375 (Tenn.1979). On the other hand, however, T.C.A. § 47-2-403(1) empowers a purchaser with a voidable title to confer good title upon a good faith purchaser for value where the good[s] were

procured through fraud punishable as larcenous under the criminal law. The distinction between *theft* and *fraud* in this context is found in the statutory definitions of "delivery" and "purchase." Delivery concerns a voluntary transfer of possession, T.C.A. § 47–1–201(14), and purchase refers to a voluntary transaction creating an interest in property. T.C.A. § 47–1–201(32). In the present case, the plaintiff voluntarily relinquished possession to Rickman. As one commentator has pointed out, "[a] thief who wrongfully takes goods is not a purchaser ... but a swindler who fraudulently induces the victim to voluntarily deliver them is a purchaser ..."

.   .   .   .   .

*Since the property was voluntarily delivered, we have determined that it was not procured by theft in the ordinary sense of the term....*

691 S.W.2d at 556 (emphasis added).

We concluded in *Jernigan* that as Rickman was not a purchaser under the Code, he had a voidable title to the tractor in question and was thus in a position to transfer good title to the defendant, who was a good faith purchaser for value. The trial court was in error in relying upon *Butler*, as it lacks the element of voluntary relinquishment.

■ In his sworn complaint as well as his deposition, plaintiff characterized the transfer of possession to Bradley as a consignment—i.e., a voluntary relinquishment of possession to her. She was a purchaser as defined in T.C.A. § 47–1–201(33) and 47–1–201(32). As such, she was empowered by that transaction to pass title to Salaam, who in turn passed title to defendant, a good faith purchaser for value, as found by the trial court, which noted that defendant had no actual knowledge or reason to believe that Salaam was not the true owner of the rugs. Furthermore, defendant contends that it complied at all times with the Tennessee Pawn Brokers Act and that it acquired title to the rugs. T.C.A. § 45–6–213, which governs pawn transactions involving stolen property, reads in pertinent part as follows:

(b)(1) The party asserting ownership of any property, which he alleges is stolen and which is in the possession of a pawnbroker, may recover such property by making a report to any law enforcement agency of the location of such property and providing the law enforcement agency with proof of ownership of the property, *provided, that a report of the theft of the property was made to the proper authorities within thirty (30) days after obtaining knowledge of the theft or loss;* and provided further, that the party asserting ownership will assist in the prosecution of the party pawning such item....

(2) In the event that the party asserting ownership of the pawned article has provided such timely report of the theft and/or loss of such article, and the pawnbroker presents acceptable evidence to the law enforcement agency of having received proper proof of ownership from the person selling or pledging the property, then and only then shall it be understood the law enforcement agency has satisfied its processes, duties and responsibilities. It shall then inform the party alleging ownership that it will be necessary for that person to commence an appropriate civil action for the return of the items within thirty (30) days of receiving such notice. The pawnbroker shall not be required to surrender such property to any law enforcement officer or agency or any other person absent an appropriate warrant.

■ Subsection (b)(1) of § 213 specifically provides relief for someone plaintiff's position. The statute gives such a person a right of recovery if he notifies the "proper authorities" of the theft and the location of the property purported to be stolen within 30 days after acquiring such knowledge. While the rugs were originally taken from his store with his consent in December, 1990, in April, 1991 upon locating and inspecting them at defendant's pawn shop he gained knowledge of sufficient facts to lead him to believe that the rugs had been disposed of without his consent. However, as late as November, 1991, after this suit had been filed, plaintiff admitted that he had never reported the rugs as being stolen. Therefore, he lost his rights

to recover possession of them under the Pawnbrokers Act.

Lastly, we note in passing that plaintiff also failed to protect his rights by filing a UCC–1, which enables him to protect his interest in consigned goods under T.C.A. § 47–2–326.

Accordingly, the judgment of the trial court is reversed. Plaintiff's suit is accordingly dismissed. Costs in this cause are taxed to plaintiff, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.