IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 20, 2023 Session

**LADON RELLIFORD v. JERRY BURKS ET AL.**

**Appeal from the Chancery Court for Shelby County**
**No. CH-19-1717     Gadson W. Perry, Chancellor**

———————————————————

**No. W2022-00997-COA-R3-CV**

———————————————————

The plaintiff took his car to a body shop for repair. The owner of the body shop, who had obtained title of the vehicle through an unknown means, sold the car to the defendant, CarMax. The plaintiff brought suit against the owner of the body shop and CarMax, seeking the return of his car. The trial court granted summary judgment to CarMax, finding it held valid title as a good faith purchaser for value. Because we find that the undisputed facts do not support a conclusion that CarMax is entitled to judgment as a matter of law, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;**
**Case Remanded**

JEFFREY USMAN, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Shantell S. Suttle, Cordova, Tennessee, for the appellant, Ladon Relliford.

Erika R. Barnes, Andrew Battle Sanders, and T. Dylan Reeves, Memphis, Tennessee, for the appellee, CarMax Auto Superstores, Inc.

**OPINION**

In 2017, Ladon Relliford bought a blue 2016 Chevrolet Corvette. In 2019, it was damaged by a tow truck, so Mr. Relliford contacted his insurance company. An insurance adjuster estimated the repairs would cost $6,634.03. Mr. Relliford contacted Jerry Burks of 901 Certified Kustomz, LLC, about repairing the car, and on August 29, 2019, Mr. Relliford took the car to Mr. Burks's house to discuss having the vehicle repaired. Explaining why the meeting was at his home rather than his shop, Mr. Burks told Mr.

Relliford that his shop was located elsewhere, but that he does repair estimates from his home. Messrs. Relliford and Burks came to an agreement upon repairs. Under the terms of their agreement, Mr. Relliford would obtain the necessary parts and deliver them to Mr. Burks, who would then perform the repairs and invoice Mr. Relliford bi-weekly as his shop completed the work. Upon final competition, Mr. Relliford would pay any leftover balance. Mr. Relliford left the car with Mr. Burks.

Approximately three weeks later, Mr. Relliford drove past Mr. Burks's house and saw the car sitting in the front yard and, upon checking, determined it was unlocked. Mr. Relliford contacted Mr. Burks, dissatisfied that his car was sitting in his yard and not in a secure location. Mr. Burks stated that he did not have room at his shop but would relocate the car soon. The next day, Mr. Burks moved the car to his shop and purportedly began repairs.

According to Mr. Relliford's statement of undisputed material facts, over the course of the next several weeks, Mr. Relliford brought various parts to Mr. Burks at the shop. Mr. Relliford paid Mr. Burks as he requested payment. Approximately a month later, Mr. Relliford contacted Mr. Burks for an update on the repairs. Mr. Burks claimed that the repairs were coming along. A couple of weeks after that call, Mr. Burks informed Mr. Relliford that the repairs were complete and the vehicle was ready for pickup. Mr. Relliford was surprised by Mr. Burks's statement because Mr. Relliford was still receiving parts that he had ordered for the repairs. He was also surprised by the amount that Mr. Burks said was due. Mr. Burks informed Mr. Relliford that he owed $14,577, including $7,000 for storage and $6,577 for the work performed with the extra thousand unexplained. Mr. Relliford demanded to see his car. Mr. Burks told Mr. Relliford he could not see the car unless he paid the full $14,577 that Mr. Burks claimed was due. Mr. Relliford refused. On approximately November 11, 2019, Mr. Burks threatened to sell the Corvette if Mr. Relliford would not pay. On approximately December 19, 2019, Mr. Burks informed Mr. Relliford that he "could contact a dealership" to recover the car, though it is not clear from the facts what dealership Mr. Burks was referring to.

On December 19, 2019, Mr. Relliford filed a petition for injunctive relief against Mr. Burks, seeking the return of his car. On February 17, 2020, Mr. Burks sold the car to CarMax for $34,000. Before buying the car from Mr. Burks, CarMax conducted a title search and found no indication of any third party's potential interest in or ownership of the car. CarMax required Mr. Burks to provide his driver's license, title, and registration. The Tennessee Department of Revenue had issued Mr. Burks a title and registration, listing "Jerry Burks" as the owner. Mr. Burks provided his driver's license, which listed his name as "Jerry L. Burks, II." CarMax also ordered a Tennessee Tag Inquiry Report that confirmed Mr. Burks's title and registration. Mr. Burks also made written representations to CarMax that no other person had an interest in the car, it was free from all encumbrances,

he had the right to sell the vehicle, and the title documents were not "altered, forged, fraudulent, obtained by unlawful or fraudulent means, and/or falsified in any way."

Although no specific date is provided in the record, Mr. Relliford asserts that, at some point, he began searching the car's VIN online and discovered it was for sale by Mt. Moriah Auto Sales. From the listing, Mr. Relliford saw that it had not been fully repaired. The undisputed facts show that Mt. Moriah had apparently purchased the car from CarMax, although no details of this sale are in the record. In March 2020, Mr. Relliford informed CarMax that he was the owner of the vehicle. CarMax requested documentation proving Mr. Relliford's ownership or interest in the Corvette. Mr. Relliford provided CarMax with a picture of an insurance policy with an effective date of March 30, 2020, and a picture of an advertisement for an extended service warranty. Mr. Relliford did not, however, produce any other documentation directly evidencing an ownership interest in the Corvette.

On July 31, 2020, Mr. Relliford filed an amended petition for injunctive relief, adding CarMax as a defendant. CarMax filed an answer alleging that it purchased the car as a bona fide good faith purchaser for value and filed a counterclaim seeking declaratory relief that CarMax is the legal title holder to the car.

Neither party conducted discovery. On February 9, 2022, CarMax filed a motion for summary judgment and a statement of undisputed material facts. CarMax set the hearing for April 28th. Mr. Relliford filed a motion for leave to amend his complaint on April 21st. In his proposed amended petition, Mr. Relliford added additional facts about his dealings with Mr. Burks.

The next day, April 22nd, Mr. Relliford filed a response to CarMax's statement of undisputed material facts wherein he admitted all facts advanced by CarMax in its statement of undisputed material facts for the purposes of summary judgment. His response included a statement of additional undisputed material facts that largely overlapped the facts included in his proposed amended petition. Mr. Relliford did not, however, file a response to the motion for summary judgment itself. CarMax responded to the statement of additional facts, objecting to some facts as immaterial but admitting most for the purposes of summary judgment. These additional facts undisputed by CarMax were focused on the dealings between Mr. Relliford and Mr. Burks, including the fact that Mr. Relliford "dropped his Corvette off as instructed by Mr. Burks" and that Mr. Burks acted "fraudulently" in failing to return the car.

Mr. Relliford was unable to set a hearing on the motion for leave to amend before the summary judgment motion was set to be heard. Attached to Mr. Relliford's motion to amend was his proposed amended complaint. The proposed amended complaint included the facts found in both parties' statements of undisputed material facts.

At the April 28th hearing on the motion for summary judgment, the trial court stated that it would hear the motion for summary judgment before the motion to amend because the latter was filed too late. The court explained that Mr. Relliford waited until April 21st to file his motion for leave to amend—merely a week before the scheduled hearing on the motion for summary judgment—when he could have filed the motion to amend anytime in February or March, giving time to schedule the hearing before the summary judgment hearing. Having declined to delay ruling on the motion for summary judgment, the trial court noted that Mr. Relliford did not timely respond to CarMax's statement of undisputed material facts nor did Mr. Relliford file a response in opposition to the motion for summary judgment. The trial court stated that failure to file a response in opposition to summary judgment generally results in a waiver of any argument or defense. However, the trial court decided to consider the responses filed by Mr. Relliford to CarMax's statement of undisputed material facts as a response to the summary judgment motion and allowed counsel to present an argument at the hearing on the motion for summary judgment.

After hearing from the parties, the trial court ruled from the bench. The trial judge determined that CarMax was a bona fide purchaser for value and that Mr. Burks had voidable title and he was, therefore, under Tennessee's Uniform Commercial Code (UCC), able to transfer good title to CarMax. The trial court found that under the UCC Mr. Burks did not commit theft as alleged by Mr. Relliford. The trial court stated that the facts were undisputed by either Mr. Relliford or CarMax for purposes of summary judgment. Because of this, the trial court granted CarMax's motion for summary judgment. The trial court entered a written order confirming its oral ruling on May 9, 2022, stating that there were no genuine issues of material fact and that CarMax was entitled to judgment as a matter of law. Finding no just reason for delay, the trial court made the order a final judgment as to CarMax under Tennessee Rule of Civil Procedure 54.02(1).

On May 20, 2022, Mr. Relliford filed both a motion to alter or amend the judgment under Tennessee Rule of Civil Procedure 59.04 and a motion for reconsideration under Rules 54.02 and 60.02 alleging "additional facts and newly obtained evidence which was not obtained during the summary judgment hearing and if produced will substantially affect the decision of the Honorable Court . . . ." The new fact alleged in both largely identical motions was that CarMax must have known of Mr. Relliford's interest in the Corvette when it purchased the car from Mr. Burks because CarMax had produced documents in discovery after the granting of the motion showing that CarMax was aware that Mr. Relliford previously purchased this particular Corvette from CarMax in 2017.

The trial court denied Mr. Relliford's post-judgment motions on June 21, 2022, stating that there was no basis for relief under Tennessee Rules of Civil Procedure 54.02, 59.04, or 60.02. The trial court noted that Mr. Relliford did not request additional time to conduct discovery before or during the hearing on CarMax's motion for summary judgment. In addition, the "new" facts asserted in Mr. Relliford's affidavits were not properly before the court, nor were they "new" information, as Mr. Relliford "clearly had

- 4 -

personal knowledge" before the hearing regarding when and from whom he purchased the vehicle.

Mr. Relliford filed his notice of appeal on July 21, 2022. The trial court entered the written order regarding Mr. Relliford's motion to amend his petition on September 16, 2022, denying it in part, as it related to CarMax, and granting it in part, as it related to Mr. Burks. In its written order, the trial court denied the motion to amend as it related to CarMax because the "additional allegations in the Amended Petition that pertain to [CarMax] are moot in light of the Court's ruling on CarMax's Motion for Summary Judgment on April 28, 2022."

On appeal, Mr. Relliford argues that the trial court erred in failing to address his motion to amend before addressing the motion for summary judgment, erred in granting the motion for summary judgment, and erred in denying his post-judgment motions. CarMax raises an additional issue, arguing that the post-judgment motions were not proper and therefore did not toll the 30-day appeal window, leading this appeal to be untimely.

II.

First, we address CarMax's challenge to this court's subject matter jurisdiction. CarMax argues that Mr. Relliford's notice of appeal was untimely. According to CarMax, Mr. Relliford's post-judgment motions were improper for the purpose of tolling the appeal deadline because the motions were, in substance, motions to reconsider, and motions to reconsider do not toll the appeal deadline. Tennessee Rule of Appellate Procedure 4(a) requires an appealing party to file a notice of appeal within 30 days of the entry of the final judgment. The filing of specific post-judgment motions can extend the appeal deadline. Tenn. R. Civ. P. 59.01; Tenn. R. App. P. 4(b). Specific motions that extend the window to appeal include: (1) Rule 50.02 motions for judgment in accordance with a motion for a directed verdict; (2) Rule 52.02 motions to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) Rule 59.07 motions for a new trial; or, most applicable here, (4) Rule 59.04 motions to alter or amend the judgment. Tenn. R. Civ. P. 59.01; Tenn. R. App. P. 4(b). A motion to reconsider does not affect the filing period. *Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *5 (Tenn. Ct. App. Feb. 10, 2016) ("[I]f Goetz's post-judgment motion was, in substance, a motion to reconsider, then it had no effect on the thirty-day filing period, and we must dismiss Goetz's appeal as untimely filed.").

To determine whether a post-judgment motion is one of the specified motions that extends the deadline, courts do not "simply rely on the motion's title." *Id.* Rather, Tennessee courts look to the motion's substance to determine if it is a motion that has a

tolling effect.  *Id.*[1]  In considering the substance of a motion, this court must also consider the motion in line with the mandate of Tennessee Rule of Appellate Procedure 1, "which instructs that the rules of appellate procedure are to be 'construed to secure the just, speedy, and inexpensive determination of every proceeding *on its merits*.'"  *Farmer*, 970 S.W.2d at 455  (quoting Tenn. R. App. P. 1 (emphasis added)).

Here, Mr. Relliford timely filed two motions; one is titled a Rule 59.04 motion to alter or amend, the other a motion for reconsideration under Rules 54.02 and 60.02.  He then filed his notice of appeal within 30 days of the trial court's denial of these motions.  CarMax argues that the Rule 59.04 motion is not, in substance, actually a motion to alter or amend.  According to CarMax, Mr. Relliford's motion failed to address a Rule 59.04 ground, but instead merely asked the trial court to consider additional facts that Mr. Relliford knew about previously, making the motion a motion to reconsider.

Given the nature of CarMax's argument, this court must, therefore, consider whether either of Mr. Relliford's post-judgment filings were, in substance, a Rule 59.04 motion.  Tennessee courts have determined that a litigant may base a Tenn. R. Civ. P. 59.04 motion to alter or amend on one of four basic grounds: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in law; and (4) other manifest injustice. *Parigin v. Mills*, No. E2016-00640-COA-R3-CV, 2017 WL 1032740, at *5 (Tenn. Ct. App. Mar. 16, 2017) (citing *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001)).  "In order to sustain a motion to alter or amend under Rule 59.04 based on newly discovered evidence, 'it must be shown that the new evidence was not known to the moving party prior to or during trial and that it could not have been known to him through exercise of reasonable diligence.'"  *Kirk v. Kirk*, 447 S.W.3d 861, 869 (Tenn. Ct. App. 2013) (quoting *Seay v. City of Knoxville*, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983)).

In his Rule 59.04 motion, Mr. Relliford requested that the trial court alter or amend its judgment based on "additional facts and newly obtained evidence."  This stated basis plainly falls within the contours of a Rule 59.04 motion.  In his motion, Mr. Relliford stated that, after the hearing on CarMax's motion for summary judgment, CarMax provided him with copies of documents it had in its possession at the time it purchased the car from Mr. Burks.  Among these documents was a copy of Mr. Relliford's 2017 purchase agreement indicating that he had bought the exact car at issue from CarMax and a finance agreement

---

[1] *See also Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998) ("[W]e conclude that the 'Motion to Reconsider' . . . is in substance a Rule 59.04 motion to alter or amend. . . ."); *Bemis Co., Inc. v. Hines*, 585 S.W.2d 574, 575 (Tenn. 1979) (holding that the plaintiff's "Motion to Set Aside Decree and Restore the Cause to the Docket" was, in substance, a motion under Tenn. R. Civ. P. 59.02 for a new trial); *Lee v. State Volunteer Mut. Ins. Co.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *7 (Tenn. Ct. App. Jan. 21, 2005) (holding that the plaintiffs' "Petition to Rehear" was, when given "the most charitable reading possible," a motion under Tenn. R. Civ. P. 59.04 to alter or amend); *Hawkins v. Hawkins*, 883 S.W.2d 622, 624 (Tenn. Ct. App. 1994) (holding that the plaintiff's "Motion to Reconsider" was, in substance, a motion under Tenn. R. Civ. P. 59.04 to alter or amend).

between the parties. According to Mr. Relliford's motion, this evidence, which he only knew CarMax had in its possession after the summary judgment hearing, directly contradicted CarMax's claim that it had no notice that anyone other than Mr. Burks had an interest in the car. CarMax argues that these documents merely show that Mr. Relliford bought the car from CarMax, a fact he surely knew at the time of the summary judgment motion, so there were no "new" facts. According to CarMax, he could not show that the evidence was not known to him or could not have been known to him though the exercise of reasonable diligence. *See Kirk*, 447 S.W.3d at 869.

Having considered such arguments, the trial court held that there was no basis for altering or amending the order granting summary judgment to CarMax, primarily because the evidence presented by Mr. Relliford in his motion was not "new" and therefore did not support his requested relief. The trial court stated that Mr. Relliford had personal knowledge of his purchase of the car from CarMax at the time of the summary judgment hearing. The trial court did not, as CarMax suggests, find that Mr. Relliford's motion was not a motion under Rule 59.04. Rather, it concluded that the motion was simply unavailing.

From our review of Mr. Relliford's motion, we agree that the substance of Mr. Relliford's motion was simply an unsuccessful Rule 59.04 motion. Mr. Relliford argued that he received evidence from CarMax after the summary judgment hearing that he did not have before and, on this point, he was correct. CarMax provided him with documents after the hearing. He argued that the "new" fact was that CarMax knew of his interest in the car, not that he had purchased the car from CarMax. Mr. Relliford asked the trial court to alter its judgment based on newly discovered evidence under Rule 59.04(2), but this argument was not fruitful. Mr. Relliford's argument was not an attempt to present "previously unasserted theories or legal arguments or relitigate previously adjudicated matters under the guise of filing a Tenn. R. Civ. P. 59.04 motion." *Goetz*, 2016 WL 537818, at *6 (cautioning parties against filing improper Rule 59.04 motions to evade appeal deadlines).

Embracing CarMax's argument would threaten to undermine the Rule by rendering any unsuccessful Rule 59.04 motion not truly a Rule 59.04 motion by reason of its failure to meet the standards for granting such a motion. We find no basis in Tennessee law for such an understanding of whether a motion serves to toll the time period for filing an appeal. The trial court viewed this motion both in its title and substance as constituting a Rule 59.04 motion, though an unpersuasive one. There is no error in this understanding. We conclude that Mr. Relliford's Rule 59.04 motion tolled the 30-day appeal deadline, and his appeal was timely filed. Therefore, this court has subject matter jurisdiction over this appeal.

## III.

Having determined that we have subject matter jurisdiction over Mr. Relliford's

appeal, we turn to consideration of Mr. Relliford's arguments. At the epicenter of Mr. Relliford's appeal is his contention that the trial court erred in granting summary judgment to CarMax. This court "review[s] a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye v. Women's Care Ctr. Of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* When assessing the evidence in considering summary judgment, the evidence "must be viewed in a light most favorable to the claims of the nonmoving party, with all reasonable inferences drawn in favor of those claims." *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 286). Viewing the evidence in this light, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye*, 477 S.W.3d at 250.

Mr. Relliford challenges the granting of summary judgment, arguing that the trial court erred because there were genuine issues of material fact to be tried. The disputed material facts, as asserted by Mr. Relliford, are:

> whether Mr. Burks stole the Corvette from Mr. Relliford, whether a bailment existed between Mr. Relliford and Mr. Burks, whether Mr. Burks was a legal and rightful owner of the Corvette, whether CarMax has a valid Title to the Corvette, whether CarMax is a bona fide purchaser with good faith, whether CarMax had reasonable notice that someone other than Mr. Burks had an interest in the Corvette, whether CarMax acted prudently and reasonably under the circumstances, whether CarMax had authority to sell Mr. Relliford's Corvette to Mt. Moriah Auto Sales, whether Mr. Relliford is the rightful owner of the Corvette, and whether CarMax knew that Mr. Relliford was the rightful owner at the time.

Mr. Relliford did not dispute any of the facts in CarMax's statement of undisputed material facts. He did, however, file a statement of additional material facts addressing his interactions with Mr. Burks, and CarMax admitted the majority of these facts for purposes of summary judgment. At the time of summary judgment, Mr. Relliford cannot simply rest on his allegations or legal conclusions and then assert that there are genuine issues of material fact without stating what facts are disputed. *See Rye*, 477 S.W.3d at 265. As we have previously stated, if a properly supported motion for summary judgment is made, the opposing party must respond and set forth specific facts showing that there is a genuine issue for trial. *Id.* The nonmoving party "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

With the applicable standards in mind, we consider whether the trial court was correct to determine that CarMax is entitled to judgment as a matter of law. Here, the trial court concluded that, based on the undisputed facts, Mr. Burks acquired voidable title and therefore was able to transfer good title to CarMax as a bona fide purchaser for value. Mr. Relliford argues that Mr. Burks stole the car and had void title. Under his theory, even if CarMax is a purchaser, it could not acquire any more than void title from Mr. Burks. CarMax did not dispute Mr. Relliford's statements of fact before the trial court that Mr. Burks was a thief or that he acquired the car unlawfully. Rather, CarMax responds that any such contention is immaterial because Mr. Relliford voluntarily relinquished the car to Mr. Burks.

Traditionally, under Tennessee common law, bailees lacked any ability to transfer title in any form, even to an innocent good faith purchaser for value. The Tennessee Supreme Court observed of a bailee that he or she "has no title and cannot convey the property to an innocent purchaser for value." *Knox Cnty. v. Fourth & First Nat. Bank*, 182 S.W.2d 980, 984 (Tenn. 1944). This court stated when addressing bailees and transfers of personal property to innocent purchasers that "it is uniformly held that one so intrusted [(bailees)] with possession can transfer no title as against the true owner even to one who possesses all the attributes of an innocent purchaser." *Cowan v. Thompson*, 152 S.W.2d 1036, 1038 (Tenn. Ct. App. 1941). Tennessee's common law approach was consistent with its sister states for "[a]t common law it was well established that a bailee could not convey better title to bailed goods than he had. Mere possession of one's goods by a bailee would not estop the bailor from recovering them from a subsequent innocent party who relied upon such possession as apparent ownership." James L. Padgett, *Uniform Commercial Code Section 2-403(2): The Authority of a Bailee to Convey Title*, 21 Fla. L. Rev. 241, 242 (1968) (footnote omitted).

This case, however, turns not upon Tennessee common law but instead upon statutory analysis with both parties citing Tennessee Code Annotated section 47-2-403, part of the Uniform Commercial Code as adopted in Tennessee, as the controlling statute in this case. Section 403 addresses the power of a party to transfer title to a subsequent purchaser:

(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods

have been delivered under a transaction of purchase the purchaser has such power even though:

(a) the transferor was deceived as to the identity of the purchaser, or

(b) the delivery was in exchange for a check which is later dishonored, or

(c) it was agreed that the transaction was to be a "cash sale," or

(d) the delivery was procured through fraud punishable as larcenous under the criminal law.

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

Tenn. Code Ann. § 47-2-403.

CarMax argues, and the language of the trial court in its ruling most neatly fits with, a rationale for application of the UCC to allow transfer of valid title via subsection (1), which applies to purchases. Accordingly, we first address this subsection's application to this case.

For purposes of the UCC, "[p]urchase" is defined as the "taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property." Tenn. Code Ann. § 47-1-201(b)(29) (effective July 9, 2012 to April 10, 2024). A "purchaser" is simply one who "takes by purchase." Tenn. Code Ann. § 47-1-201(b)(30). "Good faith" means "honesty in fact in the conduct or transaction concerned." Tenn. Code Ann. § 47-1-201(b)(20).

CarMax cites to *Jernigan v. Ham*, 691 S.W.2d 553, 556 (Tenn. Ct. App. 1984), for the proposition that Mr. Burks had, at worst, voidable title with Mr. Burks as a purchaser. CarMax's reliance on *Jernigan*, however, is misplaced. In *Jernigan*, the plaintiff offered a tractor for sale. *Jernigan*, 691 S.W.2d at 554. He found a buyer and the tractor was loaded onto the buyer's trailer when the buyer presented a check for the agreed-upon price. *Id.* at 555. The plaintiff would only take cash, but since the tractor was already loaded onto the trailer, he let the buyer take the tractor and come back later with cash. *Id.* The buyer

- 10 -

took the tractor and never came back, swindling the plaintiff out of possession of the tractor, before the buyer sold it to a third party. *Id.* The court concluded that "[s]ince the property was voluntarily delivered, we have determined that it was not procured by theft in the ordinary sense of the term." *Id.* at 556. The court based this decision on the language of section 403(1)(d) allowing title to pass even when delivery was procured by larcenous fraud. *Id.* It stated,

> In the present case, the plaintiff voluntarily relinquished possession to [the buyer]. As one commentator has pointed out, "[a] thief who wrongfully takes goods is not a purchaser . . . but a swindler who fraudulently induces the victim to voluntarily deliver them is a purchaser . . ." 2 W. Hawkland, Uniform Commercial Code Series, § 2-4-3-03, pp. 606-07 (1982).

*Id.* at 556.[2]

CarMax argues that this logic applies directly to this case, allowing Mr. Burks to transfer his voidable title as good title to CarMax. This argument, however, misses an essential foundational aspect of *Jernigan*'s holding and the application of section 403(1): the original transaction in *Jernigan* involved a purchase. In *Jernigan*, the plaintiff argued that the original transaction was not a purchase, but instead a bailment. *Id.* In considering this argument, the court explained that a bailment is "the delivery of personalty to another for a particular purpose or on mere deposit of an express or implied contract that after the purpose has been fulfilled, the property should be returned to the person who delivered it." *Id.* (citing *Rhodes v. Pioneer Parking Lot, Inc.*, 501 S.W.2d 569 (Tenn. 1973)). The *Jernigan* Court specifically rejected the bailment argument, stating that the plaintiff intended to relinquish possession permanently rather than temporarily since he was offering the tractor for sale. *Id.* Therefore, because that transaction was a "purchase," the protection of 403(1)(d) could apply and the buyer could transfer his voidable title to the third party. *Id.* Confronted with an argument that bailments are not purchases, the court did not reject the plaintiff's argument in *Jernigan* under a rationale that bailments constitute purchases under Tennessee law but instead rejected the contention on the ground that the transaction at issue did not involve a bailment.

Here, similar to the plaintiff in *Jernigan*, Mr. Relliford states that his transaction with Mr. Burks was a bailment. In fact, Mr. Relliford stated that the transaction was a bailment in his statement of undisputed facts, and CarMax responded that it was undisputed that the transaction was a bailment for purposes of summary judgment.[3] In direct contrast

---

[2] *See also Alsafi Oriental Rugs v. Am. Loan Co.*, 864 S.W.2d 41, 44 (Tenn. Ct. App. 1993) (characterizing *Jernigan* as focused on the "voluntary relinquishment of possession" to the "purchaser" and allowing the "purchaser" to transfer title in the context of a consignment).

[3] However, because a bailment is "regarded as a contract relationship," *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 754 (Tenn. Ct. App. 1991), the existence of a bailment is not a fact, but a legal conclusion.

- 11 -

to *Jernigan*, the undisputed facts do not show that Mr. Relliford intended to relinquish title permanently. From the facts before this court, there was no intent to sell the car to Mr. Burks or sale that occurred.

CarMax's argument that Mr. Burks qualified as a purchaser is, at its roots, dependent upon its contention that this status as purchaser necessarily follows because "Relliford did not dispute that he voluntarily delivered the car to Burks." "Purchase" under the UCC is certainly a broad concept, extending beyond the most conventional application of buying and selling, but CarMax's reading of the term poses significant problems for the operation of the statutory scheme as a whole. Under the statute, different standards apply to "transaction[s] of purchase" than apply to entrustments. Tennessee Code Annotated section 47-2-403(3), in defining "[e]ntrusting," indicates that it "includes any delivery and any acquiescence in retention of possession . . . ." CarMax's understanding of the word purchase devours the distance between purchase and entrusting.

The Official Comments to the Uniform Commercial Code also support the conclusion that CarMax's argument is overreaching in asserting that voluntary delivery alone equals purchase. The Tennessee General Assembly has specifically directed Tennessee courts that

> In any dispute as to the proper construction of one (1) or more sections of chapters 1-9 of this title, the Official Comments pertaining to the corresponding sections of the Uniform Commercial Code, Official Text, as adopted by the Uniform Law Commission and the American Law Institute and as in effect on July 1, 2013, in this state, shall constitute evidence of the purposes and policies underlying such sections, unless:
>
> (1) The sections of chapters 1-9 of this title that are applicable to the dispute differ materially from the sections of the Official Text that would be applicable thereto; or
>
> (2) The Official Comments are inconsistent with the plain meaning of the

---

*See Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015) ("The determination of whether a contract has been formed is a question of law." (quoting *German v. Ford*, 300 S.W.3d 692, 701 (Tenn. Ct. App. 2009)).

Although the question of whether or not a bailment existed between the parties is not squarely before us, we point out that whether the bailee is a "in the business" of selling the same kind of goods directly affects the bailee's ability to transfer good title. *See* 67 Am. Jur. 2d Sales § 387 (explaining that a bailee who sells goods of that kind has the power to transfer good title to a buyer in the ordinary course while one who does not regularly sell such goods does not). Here, the record includes no facts regarding whether Mr. Burks regularly sells cars.

- 12 -

applicable sections of chapters 1-9 of this title.

Tenn. Code Ann. § 47-1-103(c).  Neither of the exceptions under the Tennessee statute for disregarding the Official Comments are applicable in the present case, so we turn to consider the relevant comments, as directed by the General Assembly.

The Official Comments to the UCC address the applicability of the UCC's protections to circumstances involving transfers by bailors as occurring through entrusting of goods, not as part of some all-encompassing understanding of the term purchase.  *See* U.C.C. § 2-403, Official Comment 2.  This route of entrustment, rather than purchase, as the conduit for applying the UCC's safeguards so that they reach transfers by bailees is also plainly consistent with the original, long-standing, and foundational understanding of the relevant UCC provisions.  In addressing transfer by bailees that could form a basis for conferring title, this extension of the UCC's protective measure to transfers by bailees has been understood to occur via entrustment, not through an understanding of bailees as constituting purchasers.  *See generally*, *e.g.*, James L. Padgett, *Uniform Commercial Code Section 2-403(2): The Authority of a Bailee to Convey Title*, 21 Fla. L. Rev. 241 (1968); William D. Warren, *Cutting Off Claims of Ownership Under the Uniform Commercial Code*, 30 U. Chi. L. Rev. 469 (1963); Note, *The Good Faith Purchase of Goods and "Entrusting" to a Merchant Under the Uniform Commercial Code: Section 2-403*, 38 Ind. L.J. 675 (1963).

In fact, the entrustment of an item of personal property to a repair shop that deals in goods of the kind being repaired, via the oft-employed watch repair business example, provides a textbook illustration of the applicability of the entrustment route to protection under the UCC.  *See*, *e.g.*, 2 Quinn's UCC Commentary & Law Digest § 2-403[A][5] (Rev. 3d ed. 2024) (employing the watch repair example in relation to entrusting); 2 L of Purchasing § 23:4 (2d ed. 2024) (utilizing the watch repair example in relation to entrusting); Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 72 (2d ed. 2024) (drawing upon the example of watch repair to illustrate the concept of entrustment).  Tennessee's UCC provision defining purchase, while broad, is identical to that set forth in the UCC itself which has not been understood to encompass bailment.

Courts in other jurisdictions addressing comparable circumstances have concluded that bailment for repair does not constitute a purchase.  For example, the Alabama Court of Civil Appeals reasoned as follows:

> Although Chad Ryan physically delivered his mother's Camaro to Duckett's shop, he did so only for the purpose of working on the automobile with Duckett.  We conclude that Gwendolyn Ryan's delivery of her automobile to Duckett for restoration work did not constitute a transaction of purchase, and, therefore, that Duckett obtained no title to the Camaro. It follows that

- 13 -

Duckett could not transfer title to Patterson, even though Patterson was a good faith purchaser for value. Patterson's title was void.

*Ryan v. Patterson & Son Motors*, 726 So. 2d 667, 669 (Ala. Civ. App. 1998). Similarly, the United States Court of Appeals for the Fifth Circuit observed in a parenthetical that a "bailee cannot pass title to good faith purchaser for value under section 2-403(1); although [a] bailee could conceivably have passed title to buyer in ordinary course under a section 2-403(2) entrustment theory . . . ." *Am. Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 268 (5th Cir. 1981) (citing *In re Sitkin Smelting & Refining, Inc.*, 639 F.2d 1213, 1215-17 (5th Cir. 1981)). Additionally, the United States Court of Appeals for the First Circuit determined that, despite the breadth of the definition of purchase, a bailee could not transfer title under the theory of the bailee as a purchaser. *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 97-98 (1st Cir. 1993).

Reflecting upon this same essential question, the authors of the *American Jurisprudence* treatise, when addressing the UCC and bailments, unambiguously place the safeguard for purchasers involving bailments under the entrustment, not the purchase, rationale:

> The Uniform Commercial Code (U.C.C.) broadens pre-Code law so that even a bailee, who has no authority whatsoever to make a sale, can confer good title to goods to a third party if such bailee regularly sells the same kind of goods. Accordingly, a buyer of an automobile from a dealer, in the ordinary course of business, takes title superior to that of a repossessing lien creditor who had stored the automobile with the dealer. Likewise, a motor freight carrier that also was a dealer selling silos had power to sell silos that it was transporting for another and to confer good title on a buyer in the ordinary course of business.
>
> If, however, one is not in the business [of] selling such goods, then the mere fact that one person entrusts another person with possession of property does not give the entrustee any authority or power to make an effective sale of the property. The bailor may recover the property from a third person, who obtained the property from the bailee.

67 Am. Jur. 2d Sales § 372 (footnotes omitted). In the absence of UCC entrustment circumstances that allow for transfer of title, the *American Jurisprudence* treatise declares that "where the owner loses or is robbed of property and the finder or thief, or anyone who

has a temporary right to use it, attempts to sell or pledge it without consent, the owner may follow and reclaim it no matter who possesses it when found." 67 Am. Jur. 2d Sales § 370.[4]

The statutory construction canon of ejusdem generis also undermines CarMax's position. The Tennessee Supreme Court has observed that

> Ejusdem generis, meaning "of the same kind or class," is a canon of statutory construction that we have recognized as "dictat[ing] that 'when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed.'" Ejusdem generis is a variation of noscitur a sociis. Ejusdem generis differs in that, strictly speaking, it applies to scenarios in which "[i]f the general words are given their full and natural abstract meaning, they would include the objects designated by the specific words, making the latter superfluous."

*Flade v. City of Shelbyville*, 699 S.W.3d 272, 285 n.15 (Tenn. 2024) (citations omitted). As noted above, "[p]urchase" is defined as the "taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property." Tenn. Code Ann. § 47-1-201(b)(29). While there are a wide variety of types of bailments, a bailment is fundamentally simply "[a] delivery of personal property by one person (the *bailor*) to another (the *bailee*) who holds the property for a certain purpose, usu. under an express or implied-in-fact contract. Unlike a sale or gift of personal property, a bailment involves a change in possession but not in title." Bailment, Black's Law Dictionary (12th ed. 2024). Where a person takes property by the specifically identified routes listed in the definition of purchase, that person gains an interest in the property as against the owner that is not present in a conventional bailment but that would instead necessitate further contractual extension of the rights of the bailee and/or limitations on the rights of the bailor. *See, e.g.*, Discount, Black's Law Dictionary (12th ed. 2024) (defining discount in relevant part as "[a]n advance deduction of interest when a person lends money on a note, bill of exchange, or other commercial paper, resulting in its present value"); Pledge, Black's Law Dictionary (12th ed. 2024) (defining a

---

[4] Courts have drawn distinctions between purchasers and bailees in a variety of contexts and under the laws of various jurisdictions. Addressing a transaction involving "pawn loans – principal and interest payments on the pawn loans" and "proceeds from the sale of any collateral not redeemed by customers," a court concluded that the acquiring party in the case was "the purchaser of these loans, not a bailee." *In re Silver*, 647 B.R. 897, 917 (Bankr. E.D. Mich. 2022) (applying Michigan law). The Seventh Circuit addressing a different portion of the Illinois UCC drew a distinction between bailees and purchasers in a case involving securities. *First Nat. Bank of Cicero v. Lewco Sec. Corp.*, 860 F.2d 1407, 1412 (7th Cir. 1988). Similarly, in a case involving stock transfers, the Colorado Court of Appeals concluded that the plaintiffs were not "merely 'holders' or 'bailees' of the stock" given that the delivery included a pledge that "created limited rights in that stock in favor of plaintiffs . . . ." *Knappenberger v. Shea*, 874 P.2d 498, 500 (Colo. App. 1994). Courts have also drawn distinctions with regard to transfer authority between bailments in general and consignments. *Glenshaw Glass Co. v. Ontario Grape Growers' Mktg. Bd.*, 67 F.3d 470, 476-77 (3d Cir. 1995).

"pledge" in relevant part as "[t]he act of providing something as security for a debt or obligation"); Security Interest, Black's Law Dictionary (12th ed. 2024) (defining "security interest" as "[a] property interest created by agreement or by operation of law to secure performance of an obligation, esp. repayment of a debt; specif., an interest in personal property or fixtures securing payment or performance of an obligation"); Issue, Black's Law Dictionary (12th ed. 2024) (defining issue in relevant part as "[t]o send out or distribute officially . . . <issue stock>" and with regard to securities as "[a] class or series of securities that are simultaneously offered for sale"); *Fleckner v. Bank of U.S.*, 21 U.S. 338, 350-51, 5 L. Ed. 631 (1823) (noting that "by the language of the commercial world, and the settled practice of banks, a discount by a bank means, *ex vi termini*, a deduction or draw-back made upon its advances or loans of money, upon negotiable paper, or other evidences of debt, payable at a future day, which are transferred to the bank"); *Knappenberger*, 874 P.2d at 500 (distinguishing a purchaser via a property interest taken via pledge from a bailee based upon the interest created in the stock).

CarMax opines that Mr. Burks may have acquired title through a garage-keeper's lien and argues that such a lien would make Mr. Burks a purchaser. *See* Tenn. Code Ann. § 47-1-201(b)(29) (defining "purchase" to include taking property by a "lien"). However, CarMax also acknowledges that this contention is merely speculation and that the undisputed facts do not establish whether this is the route by which Mr. Burks obtained title. Simply stated, there are no undisputed facts in the record before this court that as a matter of law establish that Mr. Burks purchased the vehicle as defined in Tennessee Code Annotated section 47-1-201(b)(29). For CarMax to be entitled to judgment as a matter of law under section 403(1), the undisputed facts must support such a determination as a matter of law. For purposes of summary judgment, CarMax has not yet shown that Mr. Burks purchased the vehicle as opposed to having temporary possession through entrustment. It may be that, after discovery, the facts will establish that Mr. Burks is a "purchaser." However, the record at this stage is inadequate to establish that as a matter of law Mr. Burks qualified as a purchaser. The undisputed facts merely show that Mr. Relliford dropped his car off with Mr. Burks to be repaired, that there was a dispute about payment, and that Mr. Burks obtained title and sold the vehicle to CarMax. The record does not explain how Mr. Burks obtained title. Because it has not been shown that Mr. Burks was, as a matter of law, a purchaser, CarMax is not entitled to judgment as a matter of law under section 403(1).

Before foreclosing summary judgment, we turn to consider the other subsections of Tennessee Code Annotated section 47-2-403 which apply to transactions where a party entrusts goods to a "merchant who deals in goods of that kind," who then sells them to a buyer "in the ordinary course of business." Tenn. Code Ann. § 47-2-403(2)-(3). However, as with subsection (1), the undisputed facts in the record do not support a determination

that CarMax is entitled to judgment as a matter of law under these subsections.  The statute requires that the entrustee be a "merchant," which the statute defines as

> a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Tenn. Code Ann. § 47-2-104(1).  A "buyer in the ordinary course of business" requires the purchase be from a person "in the business of selling goods of that kind."  Tenn. Code Ann. § 47-1-201(b)(9); *see also Duffy v. Elam*, No. W2015-01456-COA-R3-CV, 2016 WL 4472705, at *3 (Tenn. Ct. App. Aug. 24, 2016) ("A merchant who 'deals in goods' should be construed as 'one who is engaged regularly in selling or leasing goods of the kind.'" (quoting 3A Lawrence's Anderson on the Uniform Commercial Code § 2–403:73 (3d. ed.)). The record is fundamentally lacking in facts about Mr. Burks and his business that would establish that he is a "merchant who deals in goods of that kind," such as whether he has sold or leased cars, how regularly he sells or leases cars, or whether he only repairs cars.  In *Duffy v. Elam*, for example, this court stated that the selling of three trailers by a business *did not* support a finding that the business was in the business of selling goods of that kind.  *Duffy*, 2016 WL 4472705, at *4 (holding that the sale to the defendant was "an isolated casual sale").

From the record before us, we cannot conclude that the "entrusting" provisions apply to the facts of this case or provide a basis for upholding the trial court's grant of summary judgment.  Discovery may ultimately reveal that Mr. Burks qualifies as a purchaser or that the entrustment provision is applicable.  Based upon the record before us, CarMax is not, however, entitled to summary judgment under any of the subsections of Tennessee Code Annotated section 47-2-403.  Considered in light of the trial court's ruling and limiting our analysis to the arguments advanced by the parties on appeal and the record before us, we simply cannot conclude that CarMax is entitled to judgment as a matter of law based on the undisputed facts in the record.  Accordingly, we reverse the trial court's grant of summary judgment to CarMax.

## IV.

Next, we turn to Mr. Relliford's argument that the trial court erred in denying his motion for leave to amend his petition.  After a responsive pleading is served, Tennessee Rule of Civil Procedure 15.01 only allows a party to amend his or her pleading with written consent of the adverse party or by leave of the court.  The decision to grant or deny a motion for leave to amend the pleadings lies within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 374 (Tenn. 2007); *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 237

(Tenn. 1993). This court has set forth the following factors that a trial court should consider in ruling on a motion to amend:

> (1) undue delay in seeking the amendment, (2) lack of notice to the opposing party, (3) bad faith or dilatory motive of the moving party, (4) repeated failure by the moving party to cure deficiencies in earlier amendments, (5) futility of the proposed amendment, and (6) undue prejudice to the opposing party.

*Hardcastle v. Harris*, 170 S.W.3d 67, 81 (Tenn. Ct. App. 2004). The most important of these factors is whether the proposed amendment would be prejudicial to the opposing party. *Id.* When a trial court denies a motion to amend, the court "must give a reasoned explanation for its action." *Gregory v. Melhorn*, No. E2012-02417-COA-R3-CV, 2013 WL 6857945, at *4 (Tenn. Ct. App. Dec. 27, 2013) (quoting *Shim*, 226 S.W.3d at 374).

In its September 16th written order, the trial court denied Mr. Relliford's motion to amend as it related to CarMax,[5] stating, that "[a]dditional allegations in the Amended Petition that pertain to [CarMax] are moot in light of the Court's ruling on CarMax's Motion for Summary Judgment on April 28, 2022." As noted by the Tennessee Supreme Court, "[i]t is well settled that trial courts speak through their written orders." *Elvis Presley Enterprises, Inc. v. City of Memphis*, 620 S.W.3d 318, 324 n.6 (Tenn. 2021). Having reversed the trial court's order granting CarMax's motion for summary judgment, the trial court's reason for denying the motion to amend, its mootness, no longer stands. We therefore vacate the trial court's determination that the motion to amend was moot and remand for consideration of the motion to amend as it applies to CarMax.

V.

The judgment of the trial court is reversed. Costs of this appeal are assessed against the appellee, CarMax Auto Superstores, Inc., for which execution may issue if necessary.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE

---

[5] The trial court *granted* the motion to amend as far it applied to the other defendant, Mr. Burks.